UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BUDLER JUNIOR APOLLON,<br>Petitioner,<br>v.<br>MARKWAYNE MULLIN, Secretary of the Department of Homeland Security, et al.,<br>Respondents. | Case No.: 26cv4835-LL-JLB<br>**ORDER GRANTING AMENDED PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241**<br>[ECF No. 5] |

Before the Court is Petitioner Budler Junior Apollon's ("Petitioner") Amended Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241. ECF No. 5 ("Pet."). Respondents filed a Return [ECF No. 6], and Petitioner filed a Traverse [ECF No. 7]. For the reasons set forth below, the Court **GRANTS** the Amended Petition.

## I. BACKGROUND

Petitioner, a native of Haiti, entered the United States through the Visa Waiver Program ("VWP") between the United States and France on November 22, 2023. Pet. at 2; ECF No. 6-1, Ex. 1 at 1. On August 21, 2024, Petitioner filed an affirmative asylum application with United States Citizenship and Immigration Services ("USCIS"). Pet. at 2; ECF No. 6-1, Ex. 2 at 3. Petitioner's application for employment authorization was

approved on February 20, 2025, and remains valid through February 19, 2030. Pet. at 2; ECF No. 6-2, Ex. 2 at 3.

On July 31, 2026, Petitioner was driving to work in Florida when Immigration and Customs Enforcement ("ICE") officers pulled him over, inquired about his immigration status, and subsequently took him into custody. Pet. at 2. Petitioner was transferred to Otay Mesa Detention Center, where he is currently being held. *See generally id.* Petitioner alleges that ICE did not provide him—either before or after his arrest—with any notice or explanation for revoking its initial "decision to allow him to remain out of detention while he was affirmatively applying for asylum." *Id.* at 2.

On August 24, 2026, Petitioner filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241. *See* ECF No. 1. On August 28, 2026, the Court conditionally appointed counsel and set a briefing schedule. *See* ECF No. 2. On September 4, 2026, Petitioner filed the instant Amended Petition, alleging that Respondents violated his due process rights when they arbitrarily revoked "their decision to allow Mr. Apollon to apply for asylum while remaining out of custody" and detained him without notice. Pet. at 3–6. Petitioner seeks a writ of habeas corpus directing Respondents to immediately release him from custody, and order that Respondents provide a pre-deprivation hearing—during which Respondents would bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or risk of flight—before any redetention of Petitioner. *Id.* at 6.

## II. LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and [] the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A district court may grant a writ of habeas corpus to a petitioner who demonstrates he "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c); *Magana-Pizano*

*v. I.N.S.*, 200 F.3d 603, 609 (9th Cir. 1999) ("28 U.S.C. § 2241 expressly permits the federal courts to grant writs of habeas corpus to aliens when those aliens are 'in custody in violation of the Constitution or laws or treaties of the United States.'"). "It is well established that the Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings." *Demore v. Kim*, 538 U.S. 510, 523 (2003) (citing *Reno v. Flores*, 507 U.S. 292, 306 (1993)). The Due Process Clause generally "requires some kind of hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990).

## III. DISCUSSION

In his Amended Petition, Petitioner claims that "Respondents violated the Due Process Clause by arbitrarily rescinding their decision to allow Mr. Apollon to apply for asylum while remaining out of custody." Pet. at 3. In their Return, Respondents submit an abbreviated response, stating that "Petitioner is lawfully detained pursuant to 8 U.S.C. § 1187 and defers to the Court on the appropriate resolution of this matter." ECF No. 6 at 2.

The Fifth Amendment guarantees that no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. Amend. V. "[T]he Due Process Clause applies to all persons within the United States, including aliens, whether their presence is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 679 (2001). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Id.* at 690.

The essence of procedural due process is giving a person who is at risk of suffering a serious loss notice and an opportunity to be heard, in a meaningful manner and at a meaningful time. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Under *Mathews*, the Court considers the following factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the [g]overnment's interest, including the function involved and the

fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335.

Across the Ninth Circuit, district courts have applied the *Mathews* test in similar factual circumstances, finding a due process violation. As a threshold matter, the Court must first determine whether Petitioner has a protected liberty interest under the Due Process Clause. Even though Petitioner was not granted a form of affirmative parole by the government, many courts have found that noncitizens in similar circumstances as Petitioner—by making their presence known to the government and the government then deciding *not* to detain them—have a protectable liberty interest. *See Millan Berrocal v. Mullin*, No. 26-CV-05391, 2026 WL 3020431, at *3 (S.D. Cal. Oct. 7, 2026) (finding that the petitioner had a liberty interest because "for more than three years, the government has had 'meaningful knowledge of [the petitioner's] immigration status and circumstances,' taken affirmative actions in processing [the petitioner's] asylum application and granting work authorization, and still made the affirmative choice not to detain her") (quoting *James Orlando H.C. v. Chestnut*, No. 26-CV-03823-MWJS, 2026 WL 1917113, at *4 (E.D. Cal. July 3, 2026))); *Jemna v. Mullin*, No. 26-CV-02396-RBM-VET, 2026 WL 2936600, at *5 (S.D. Cal. Sep. 29, 2026) (finding that the government's "decision not to detain [the petitioner] while his asylum was pending created a liberty interest and his detention without notice or an opportunity to be heard thereby violated his due process rights"); *Zhou v. Janec[k]a*, No. 26-CV-04167-DTB, 2026 WL 2365550, at *5 (C.D. Cal. Aug. 14, 2026) ("Courts have found a substantial liberty interest in circumstances where noncitizens commenced immigration proceedings, and the government chose not to detain them."); *Gagik T. v. Chestnut*, No. 26-CV-04337-MWJS, 2026 WL 1837413, at *3 (E.D. Cal. June 25, 2026) ("Judges of this district and others have repeatedly held . . . that a noncitizen who has lived at liberty for years while his immigration case proceeds—pursuant to the [g]overnment's affirmative decision not to detain him—holds a protected liberty interest in remaining free from custody, and may not be detained without pre-deprivation process."); *Kharitonova v. Albarran*, No. 26-CV-01362-JSC, 2026 WL 531441, at *2

(N.D. Cal. Feb. 25, 2026) (finding a liberty interest from "[t]he government's decision not to detain [the petitioner] 'when it processed her asylum application, took her biometrics, referred her asylum case to EOIR, and advised her to appear for multiple hearings over a period of years'").

As such, the Court agrees with the reasoning of those courts. Here, Petitioner entered the United States in 2023 and filed his affirmative asylum application with USCIS within one year of his arrival. He then received employment authorization, which remains valid through February 19, 2030. Thus, for at least two years, Respondents "had full knowledge of Petitioner's identity, immigration status and location during the pendency of [his] immigration application[]" and, "with this knowledge, the government has continuously elected not to detain Petitioner while exercising authority over [his] legal proceedings, all the while permitting [him] to remain free and at liberty while [his] applications were pending." *Zhou*, 2026 WL 2365550, at *5. Thus, the Court finds that Petitioner has a protected liberty interest in remaining free from detention.

Because Petitioner has a protected liberty interest, the Court also finds that all three factors in the *Mathews* test support a finding that Petitioner's detention without notification, reasoning, or an opportunity to be heard violated his right to due process. First, as discussed above, Petitioner has a significant liberty interest in remaining out of detention—as courts have held that noncitizens like Petitioner have a significant liberty interest in remaining free from immigration custody when they were permitted to live freely in the United States. *See Millan Berrocal*, 2026 WL 3020431, at *3; *Jemna*, 2026 WL 2936600, at *5; *Zhou*, 2026 WL 2365550, at *5. Freedom from detention is a fundamental part of due process protection. *See Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) ("[F]reedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.'" (quoting *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992))). Thus, this first factor weighs in favor of Petitioner.

Second, the risk of an erroneous deprivation of such interest is high without a pre-deprivation hearing. "The crux of due process is the opportunity to be heard at a meaningful

time and in a meaningful manner." *Zhou*, 2026 WL 2365550, at *6 (quoting *Mathews*, 424 U.S. at 333) (internal citation and quotation marks omitted). "The risk of erroneous deprivation from seizing a long-present, work-authorized asylum applicant with no criminal history, without any prior opportunity to be heard, is substantial, and the value of a pre-deprivation hearing in reducing that risk is correspondingly high." *Gagik T.*, 2026 WL 1837413, at *4; *see also Zhou*, 2026 WL 2365550, at *6 ("And where a petitioner has not received a hearing or other process prior to the revocation of [his] liberty, 'the risk of an erroneous deprivation [of liberty] is high.'" (quoting *Singh v. Andrews*, 803 F. Supp. 3d 1035, 1047 (E.D. Cal. 2025))). Thus, the second factor also weighs in favor of Petitioner.

Finally, the government's interest in detaining Petitioner without notice, reasoning, or a hearing, is low. *See Pinchi v. Noem*, 792 F. Supp. 1025, 1036 (N.D. Cal. 2025) ("[T]he government has articulated no legitimate interest that would support arresting [the petitioner] without a pre-deprivation hearing."). Here, Respondents have not offered any legitimate interest in detaining Petitioner without a pre-detention hearing, nor do they identify any material change in circumstance warranting Petitioner's detention. *See generally* ECF No. 6; *see also Pinchi*, 792 F. Supp. at 1036. Moreover, there is no indication that providing proper notice, reasoning, and a pre-deprivation hearing would be fiscally or administratively burdensome on the government. *See Pinchi*, 792 F. Supp. 3d at 1036 ("In immigration court, custody hearings are routine and impose a minimal cost." (quoting *Singh*, 803 F. Supp. at 1048)). Thus, this third and final factor weighs against Respondents.

Therefore, based on the *Mathews* test, the Court concludes that Petitioner's detention without notice or a pre-deprivation hearing violated the Fifth Amendment's Due Process Clause and renders his detention unlawful. Accordingly, the Court **GRANTS** the Amended Petition.

## IV. CONCLUSION

For the reasons set forth above, the Court **GRANTS** Petitioner's Amended Petition for a Writ of Habeas Corpus and **ORDERS** that Respondents immediately release

Petitioner from custody, subject only to the conditions to which he was previously subjected. The Clerk of Court shall enter judgment in Petitioner's favor and close this case.

**IT IS SO ORDERED**.

Dated: October 21, 2026

Honorable Linda Lopez
United States District Judge